JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

Case No.: EDCV 17-01057-CJC(AGRx)

KOSAL NHEK,

　　　　　Plaintiff,

　　v.

ULINE, INC., ALBERT BURNS, FERNANDO OCHOA, JASON BECHER, and DOES 1 through 10, inclusive,

　　　　　Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION TO REMAND TO SAN BERNARDINO SUPERIOR COURT**

## I. INTRODUCTION

On March 22, 2017, Plaintiff Kosal Nhek filed this action in San Bernardino Superior Court against Defendants Uline, Inc., Albert Burns, Fernando Ochoa, Jason Becher, and Does 1 through 10, inclusive, for (1) disability discrimination in violation of

-1-

the California Fair Employment and Housing Act ("FEHA"), Cal. Gov. Code §§ 12940 *et seq.*; (2) retaliation in violation of FEHA; (3) disability harassment in violation of FEHA; (4) failure to make reasonable accommodations in violation of FEHA; (5) failure to engage in the interactive process in violation of FEHA; (6) retaliation in violation of the California Family Rights Act, Cal. Gov. Code §§ 12945.2 *et seq.*; (7) failure to remedy or prevent discrimination, harassment, and retaliation in violation of FEHA; (8) retaliation in violation of Cal. Gov. Code § 6310; (9) wrongful termination in violation of public policy; (10) defamation; (11) failure to provide rest breaks in violation of Cal. Lab. Code §§ 226.7 and 516; and (12) failure to pay all wages due upon termination in violation of Cal. Lab. Code §§ 201 *et seq.* (*See generally* Dkt. 1-1 [Complaint, hereinafter "Compl."].) All causes of action are brought against Uline and Doe Defendants only, except for disability harassment in violation of FEHA, which is brought against all Defendants, and defamation, which is brought against Uline and Becher. (*See id.*) Defendants removed the case to this Court on May 25, 2017. (Dkt. 1.) Before the Court is Mr. Nhek's motion to remand. (Dkt. 13 [Motion, hereinafter "Mot."].) For the following reasons, the motion is GRANTED.[1]

## II. BACKGROUND

According to the Complaint, Mr. Nhek is a resident of California and, during the operative time period, was an employee of Defendant Uline. (Compl. ¶ 1.) Uline is incorporated in Delaware, but Mr. Nhek claims Uline's principal place of business is in California, while Uline claims it is in Wisconsin. (*See id.* ¶ 2; Mot. at 18; Dkt. 14 [Opposition, hereinafter "Opp."] at 1.) Between November 18, 2008, and November 13, 2012, Mr. Nhek received generally positive ratings from his employer— "fair,"

---

[1] Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing. *See* Fed. R. Civ. P. 78; Local Rule 7-15. Accordingly, the hearing set for August 7, 2017, at 1:30 p.m. is hereby vacated and off calendar.

"satisfactory," "above satisfactory," "excellent," and "outstanding." (Compl. ¶¶ 9–13.) On May 12, 2014, however, Mr. Nhek injured his back at work while lifting bundles. (*Id.* ¶ 14.) "The injury was reported to his manager, [sic] and Safety Coordinator, Mark Paul," who "declined to send him to the medical clinic, but rather demonstrated the proper technique for lifting bundles." (*Id.*) Mr. Nhek was then put on Uline's "5-day light duty program," which according to the Complaint is "designed to prevent injured employees from being seen at the clinic on the day of the injury, and the Company incurring a recordable event." (*Id.* ¶ 15.) After returning to full duty, on June 4, 2014, Mr. Nhek again experienced back pain and asked his manager if he could go home. (*Id.* ¶¶ 16–17.) His manager refused and instead sent him to do more labor-intensive work. (*Id.* ¶ 17.) Mr. Nhek then "felt the sensation of muscles starting to rupture, and he injured himself." (*Id.*) Mr. Nhek returned to work the next day and felt a sharp pain in his lower back which he reported to his manager, and was again put on the light duty program. (*Id.* ¶¶ 18–19.) He alleges that his manager was under the impression that Mr. Nhek's claim was "fraudulent" because he was trying to avoid working overtime. (*Id.* ¶ 20.)

On June 6, 2014, "Dave Vasquez documented that Mr. Nhek was upset because his back was hurting. He was challenged by his manager, Tony Alvarado, for the way he reported the injury and made to apologize for being frustrated about the injury." (*Id.* ¶ 21.) Nhek insisted that he be evaluated at the clinic, was again placed on light duty, and returned to full duty on June 27, 2014. (*Id.* ¶ 22.) On June 11, 2014, Dave Vasquez documented that the injury was the result of Mr. Nhek's "[f]ailure to properly execute," "[r]ushing," and "chancetaking [sic]." (*Id.* ¶ 23.) Mr. Nhek filed a Workers'' Compensation claim on June 17, 2014. (*Id.* ¶ 24.)

On July 1, 2014, Mr. Nhek notified Defendant Albert Burns, Uline's Assistant Manager, that loading trailers was causing him back pain. (*Id.* ¶ 25.) Mr. Nhek was placed in another position, but again complained to Mr. Burns. (*Id.*) Once again, Mr.

Nhek was place on light duty through October 2, 2014.  (*Id.* ¶ 26.)  Mr. Nhek's performance review that year was "poor."  (*Id.* ¶ 27.)

On April 24, 2015, another Uline employee dropped a picnic table during a two-man lift, which struck Mr. Nhek's left leg and caused a two-inch laceration.  (*Id.* ¶ 28.)  Although the incident was reported to Mr. Paul, he was not sent to the clinic.  (*Id.*)  Mr. Nhek's back was re-injured lifting 80-pound table tops on May 15, 2015, and he reported the incident to his manager, Defendant Fernando Ochoa, but was again put on light duty and not sent to the clinic.  (*Id.* ¶ 29.)  On September 28, 2015, Mr. Nhek injured his back lifting a product with a coworker, and reported the incident to his managers, Mr. Ochoa and David Siggins.  (*Id.* ¶ 30.)  He was once more put on light duty and not sent to the clinic.  (*Id.*)  Mr. Nhek finally went to the clinic for evaluation and treatment on October 5, 2015, and thereafter was placed on additional light duty.  (*Id.* ¶ 31.)  On October 5, 2015, Shane Quinn attributed Mr. Nhek's injury to "[f]ailure to properly execute," "rushing," and "chancetaking [sic]."  (*Id.* ¶ 32.)

Mr. Nhek further alleges that on October 14, 2015, "light duty employees were forbidden to talk to each other by David Siggins" and were "physically separated."  (*Id.* ¶ 34.)  On October 19, 2015, the light duty employees were informed by Darin Stenstrom that he "was going to develop a metric system to increase the light duty production."  (*Id.* ¶ 35.)  The next day, the light duty employees were again admonished that they were not allowed to talk to one another.  (*Id.* ¶ 36.)  On October 22, 2015, Mr. Alvarado informed them that "upper management wanted them moved back into their departments so they could see them from their offices."  (*Id.* ¶ 37.)  The next day, they were "moved between two loud and large industrial pallet wrappers" that had a "burning plastic smell."  (*Id.* ¶ 38.)  The employees requested to be moved to a safer area after "close calls with forklifts, falling pallets, and the spinning arms discarding debris."  (*Id.*)  Mr. Nhek alleges

that the light duty employees were "also harassed for using a particular bathroom" and the workers' complaints about such harassment were ignored. (*Id.* ¶ 39.)

In late November 2015, Mr. Nhek was ordered to operate a forklift in the freight department, which caused him "great back discomfort." (*Id.* ¶ 40.) Upon telling Kent Brierly that Mr. Nhek's physician recommended he discontinue operating the forklift, Mr. Brierly "was visibly upset and disgusted." (*Id.*) Mr. Nhek alleges that this "treatment was consistent with the ostensible disapproval from management of the light duty employees." (*Id.*)

While on light duty, Mr. Nhek had applied for posted positions in facilities management and was not hired. (*Id.* ¶ 41.) He received an annual performance review of "poor" on November 20, 2015, stating that he had "lost his passion for the Uline mission and department goals." (*Id.*)

On December 17, 2015, an MRI of Mr. Nhek "revealed torn tissue, intervertebral disc degeneration, disc bulges, and an acute annular tear." (*Id.* ¶ 43.) He then took CFRA leave from December 28, 2015 until January 11, 2016, and from February 12, 2016, until March 1, 2016. (*Id.* ¶¶ 44, 48.) Defendant Jason Becher, distribution manager, along with human resources representative Amanda Russell, signed the leave paperwork. (*Id.*) On April 29, 2016, he notified Mr. Burns of his physician's opinion that he could not lift more than twenty pounds, which "was noted to be a permanent restrictions [sic]." (*Id.* ¶ 49.) Less than a month later, Mr. Becher, accompanied by Jim Jacobsen from human resources, terminated Mr. Nhek on May 19, 2016. (*Id.* ¶ 50.) At first, Mr. Nhek was not given a reason for his termination. (*Id.*) When Mr. Nhek complained, Mr. Becher "said he was being terminated because of his permanent restrictions." (*Id.*)

In December 2015 and January 2016, another light duty employee by the name of Derek Kinnison received the lowest possible rating, was also blamed for his own work-related back injury, and was fired. (*Id.* ¶¶ 45–47.) Between 2015 and 2016, all four employees on light duty with Mr. Nhek were fired by Uline. (*Id.* ¶ 51.)

Mr. Nhek then initiated this lawsuit against Uline, Mr. Burns, Mr. Ochoa, and Mr. Becher. (*See generally* Compl.) After Defendants removed the case to this Court, Mr. Nhek moved to remand it to San Bernardino Superior Court for lack of diversity jurisdiction. (*See generally* Mot.) Defendants oppose the motion, arguing that there is diversity jurisdiction; they contend that Mr. Nhek is a California resident, Uline is not incorporated in California and does not have its principal place of business here, and although Mr. Burns, Mr. Ochoa, and Mr. Becher are California residents, they were fraudulently joined. (*See generally* Dkt. 1; Opp.)

## III. DISCUSSION

In assessing whether there is proper subject matter jurisdiction, courts disregard the citizenship of a defendant that has been fraudulently joined. *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001). "Joinder is fraudulent if the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1043 (9th Cir. 2009) (quotation omitted). Conversely, "if there is *any possibility* that the state law might impose liability on a resident defendant under the circumstances alleged in the complaint, the federal court cannot find that joinder of the resident defendant was fraudulent, and remand is necessary." *Id.* at 1044 (emphasis added). Fraudulent joinder must be proven by "clear and convincing evidence," *Hamilton Materials, Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007), and a defendant may present additional facts to show that the joinder is fraudulent, *McCabe v. Gen. Foods Corp.*, 811

F.2d 1336, 1339 (9th Cir. 1987). However, in determining whether a defendant was fraudulently joined, all disputed questions of fact and all ambiguities in the controlling state law must be resolved in favor of remand to state court. *Hunter*, 582 F.3d at 104 at 1042. "'There is a presumption against finding fraudulent joinder, and defendants who assert that plaintiff has fraudulently joined a party carry a heavy burden of persuasion.'" *Onelum v. Best Buy Stores L.P.*, 948 F. Supp. 2d 1048, 1051 (C.D. Cal. 2013) (quoting *Plute v. Roadway Package Sys., Inc.*, 141 F. Supp. 2d 1005, 1008 (N.D. Cal. 2001)).

Defendants' argue that very few of Mr. Nhek's allegations specifically identify Mr. Burns, Mr. Ochoa, and Mr. Becher (the "Individual Defendants"), and the ones that do cannot form the basis of a harassment claim because they "relate to mere personnel management decisions." (Opp. at 7–12.) Under FEHA, only an employer, and not "individual supervisory employees," may be personally liable for "discriminatory hiring, firing, and personnel practices." *Leek v. Cooper*, 194 Cal. App. 4th 399, 408, (2011) (citing *Reno v. Baird*, 18 Cal.4th 640 (1998)). "By contrast, individuals may be held liable under FEHA for harassment." *Id.* Even so, contrary to Defendants' assertions, official employment actions are not per se shielded from harassment claims, but rather, "can provide evidentiary support for a harassment claim by establishing discriminatory animus on the part of the manager responsible for the discrimination, thereby permitting the inference that rude comments or behavior by that same manager was similarly motivated by discriminatory animus." *Roby v. McKesson Corp.*, 47 Cal. 4th 686, 709 (2009), *as modified* (Feb. 10, 2010). For example, "in some cases the hostile message that constitutes the harassment is conveyed through official employment actions, and therefore evidence that would otherwise be associated with a discrimination claim can form the basis of a harassment claim." *Id.* at 708 (citing a case where "the immediate source of the plaintiffs' alleged injuries was the offensive sex-biased message that the supervisor conveyed, not a demotion or an unfavorable job assignment, and therefore the plaintiffs' cause of action was for harassment, not for discrimination. Nevertheless,

official employment actions constituted the evidentiary basis of the harassment cause of action, because the supervisor used those official actions as his means of conveying his offensive message.").

Although the Court agrees with Defendants that the allegations against the Individual Defendants describing conduct that could constitute harassment are sparse, their argument is more appropriate for a motion to dismiss. "[A] defendant seeking removal based on an alleged fraudulent joinder must do more than show that the complaint at the time of removal fails to state a claim against the non-diverse defendant." *Padilla v. AT & T Corp.*, 697 F. Supp. 2d 1156, 1159 (C.D. Cal. 2009). "In other words, '[r]emand must be granted unless the defendant shows that the plaintiff would not be afforded leave to amend his complaint to cure the purported deficiency.'" *Rangel v. Bridgestone Retail Operations, LLC*, 200 F. Supp. 3d 1024, 1033 (C.D. Cal. 2016) (quoting *Nasrawi v. Buck Consultants, LLC*, 776 F. Supp. 2d 1166, 1170 (E.D. Cal. 2011)).) Under the framework provided in *Roby*, Mr. Nhek's allegations concerning the Individual Defendants, such as their decisions to put him on light duty rather than send him to the medical clinic and to ultimately fire him, could be the means by which the Individual Defendants conveyed a discriminatory message. Furthermore, Mr. Nhek could amend his complaint to provide additional allegations demonstrating that the harassment was "sufficiently pervasive so as to alter the conditions of employment and create an abusive working environment." (Opp. at 8 (quoting *Fisher v. San Pedro Peninsula Hosp.*, 214 Cal. App. 3d 590, 608 (1989)).) Such allegations would be plausible against the backdrop of Uline's alleged discrimination against light duty employees, based on its pattern of ignoring complaints of physical injury, refusing to send injured employees to the medical clinic, blaming employees for their injuries, placing increased restrictions on light duty employees (including their ability to talk to each other or use a certain bathroom), placing them in unsafe working conditions, giving light duty employees negative reviews, and ultimately firing all of the light duty

employees in Mr. Nhek's cohort. (*See generally* Compl.) That Defense Counsel "offered" Mr. Nhek a prior occasion to amend his Complaint and he decided not to at that time is insufficient to show that Mr. Nhek could not *possibly* cure any potential deficiencies.[2] (*See* Opp. at 20.) Since Mr. Nhek and the Individual Defendants are California residents and Defendants have failed to meet the high burden of showing fraudulent joinder, there is no diversity jurisdiction and the case must be remanded.[3]

---

[2] Since Defendants have not shown that Mr. Nhek could not possibly state a claim of harassment against the Individual Defendants, the Court need not consider the parties' arguments concerning Mr. Nhek's defamation claim against Mr. Becher or their dispute about Uline's principal place of business.

[3] Defendants incorrectly assert that Mr. Nhek's motion to remand is untimely. (Opp. at 5–6.) "A motion to remand the case on the basis of any defect *other than lack of subject matter jurisdiction* must be made within 30 days after the filing of the notice of removal." 28 U.S.C. § 1447(c) (emphasis added). Mr. Nhek's motion clearly asserts that the Court's subject matter jurisdiction is lacking because the parties are not completely diverse, (*see generally* Mot.), so the thirty-day deadline is inapplicable here. Defendants argue that the thirty-day deadline applies because Mr. Nhek invokes 28 U.S.C. § 1441(b)(2), which provides that an action otherwise removable on the basis of diversity jurisdiction "may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." (Opp. at 6.) The Ninth Circuit has held that a motion to remand under Section 1441(b)(2) is based on a procedural defect that is subject to the thirty-day time limitation. *Lively v. Wild Oats Markets, Inc.*, 456 F.3d 933, 939–42 (9th Cir. 2006). However, Section 1441(b)(2) concerns situations where the parties are completely diverse, such as when an out-of-state plaintiff sues a defendant in their home state. The statute is inapplicable here since the parties are not completely diverse—both the Plaintiff and at least some of Defendants are California residents.

## IV. CONCLUSION

For the foregoing reasons, Mr. Nhek's motion is GRANTED and this case is HEREBY REMANDED to San Bernardino Superior Court. (Dkt. 13.) Defendants' pending motions to strike and for judgment on the pleadings are accordingly DENIED AS MOOT. (Dkts. 15, 16.)

DATED: August 2, 2017

_____
CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE